UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| GEOMELT USA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-4626 |
| | ) | |
| UNIVAR USA, INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Geomelt USA, LLC ("Geomelt"), for its Complaint against Defendant Univar

USA, Inc. ("Univar"), states.

## PARTIES TO THE ACTION

1.      Geomelt USA LLC, is an Iowa limited liability corporation with its principal

place of business at 1650 Quebec Street, Knoxville, Iowa 50138.

2.      Univar USA, Inc. is a corporation organized and existing under the laws of

Delaware with its principal place of business at 845 Terrace Court, St. Paul, MN 55101.

## JURISDICTION AND VENUE

3.      This action arises under the Antitrust Laws and Trademark Laws of the United

States of America, Title 15 of the United States Code, the Iowa Competition Law, and Iowa

common law.

4.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 15 of the Clayton Act, 15 U.S.C. §22, and Sections 32 and 43(a) of the Lanham Act, 17

U.S.C. §§ 1114, 1125(a) & 1121 and under the United States Judicial Code, Title 28 of the

United States Code, particularly 28 U.S.C. §§ 1331, 1332, and 1338(b) and 1367.

5.      The Court has personal jurisdiction over the parties, and venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(a).

**FACTS**

6.      Geomelt makes and sells, among other things, patented and proprietary formulations of de-icing products principally formulated from de-sugared sugar beet molasses. The products are used directly or in conjunction with other materials to aid the process of melting ice and snow and improving the storage and efficacy of other de-icing materials.  The products are used in such applications as state and local government department of transportation road de-icing services and commercial de-icing.

7.      Before its products are sold, Geomelt engages in costly and extensive testing of its products (including freeze point testing, corrosion resistance, bio-marking, forensic dynamics for friction analysis) to ensure that the formulation meets exacting specifications and to assure performance criteria are met before the product is used in de-icing applications.

8.      Univar is a direct competitor of Geomelt in the sale of de-icing products principally made from de-sugared sugar beet molasses because it advertises, bids for sale and sells its product to the same market of customers and potential customers as Geomelt.  Univar's products and operations are not approved or sponsored by Geomelt.

9.      Univar is the United States arm of one of the largest industrial chemical companies in the world.  It is a wholly-owned subsidiary of Univar Corporation which, in turn, is owned by a foreign company, Ulixes B.V.  Univar describes itself as the largest chemical distributor in North America with a network of facilities coast-to-coast in the United States and Canada.

## THE GEOMELT TRADEMARKS

10.     Geomelt has been manufacturing and selling quality de-icing products under its distinctive GEOMELT® trademark and trade name since at least as early as 2008.  Geomelt has acquired a reputation for producing high quality de-icing products and has acquired broad name recognition in its industry.  Geomelt has invested substantial resources in the research and development of its product and the market over the course of many years.

11.     On July 16, 2002 the U.S. Patent & Trademark Office ("PTO") granted Geomelt United States Trademark Registration for the distinctive GEOMELT® trademark (#2595270). Thereafter, the PTO granted Geomelt two additional registrations for GEOSALT® (#2887731) on September 21, 2004 and MOUNTAIN MELT® (#2816086) on February 24, 2004.

12.     Geomelt actively promotes the GEOMELT® mark through national advertising expenditures in both the United States and Canada and through its ongoing extensive sales efforts.  The mark is displayed prominently on all of its products delivered in 30-250 gallon containers and on sales and delivery documentation for large chemical pails, tanks, tractor trailer loads, and railcar loads.  The GEOMELT® mark has been used exclusively by Geomelt for many years.  Today, Geomelt manufactures, markets, and sells a significant volume of de-icing products and services in interstate commerce and in Iowa under the GEOMELT® trademark.

## THE BLOOMER PATENT

13.     On June 14, 1999 inventor Todd A. Bloomer ("Bloomer") filed Patent Application No. 09/333,180 for an Anti-freezing and De-icing Composition and Method. Thereafter, on June 27, 2000 the PTO issued to Bloomer Patent No. 6,080,330 (the "'330 Patent") for an Anti-freezing and De-icing Composition and Method.

14.     On or about October 21, 2008, Bloomer entered into an exclusive licensing agreement with Geomelt for the '330 Patent.

15.     Geomelt has been manufacturing, marketing and selling quality de-icing products subject to the valid and enforceable '330 Patent under the assignment and exclusive license agreement since at least as early as October 21, 2008.  Today, Geomelt manufactures markets and sells a significant number of goods and services in interstate commerce and in Iowa under the Bloomer patent rights.

16.     Geomelt's above-referenced registration for GEOMELT ® and its right to practice the Bloomer patent exclusively are valid and in full force.  Further, the GEOMELT® registration is legally incontestable pursuant to 15 U.S.C. § 1065 and constitutes conclusive evidence of the validity of the trademark and of the registration of the trademark, of Geomelt's ownership of the trademark, and of Geomelt's exclusive right to use the registered trademark in commerce, pursuant to 15 U.S.C. § 1115(b).

## UNIVAR'S ACCESS TO THE PRODUCT AND DISREGARD FOR IP HOLDERS' RIGHTS

17.     Prior to the exclusive licensing agreement between Bloomer and Geomelt, on April 27, 2006 Bloomer entered into a letter of intent ("LOI") with Univar to license the trademarks Mountain Melt®, Geomelt®, and Geosalt® as well as the '330 Patent.  Mountain Melt® refers to a non-Geomelt product and Geosalt® refers to a specialty Geomelt product infused with salt.

18.     Between April of 2006 and October of 2008, Univar distributed products under the LOI using the '330 Patent and proprietary information through various distributors across the United States and Canada, including Geomelt.  However, Univar delayed and stalled completion

of a license agreement with Bloomer to formalize the steps contemplated in the LOI with Bloomer. Univar's delays threatened Geomelt's access to the Bloomer patented technology and jeopardized Geomelt's substantial efforts to market and promote the patented product.

19. On information and belief, Bloomer became dissatisfied with Univar's lack of effort to promote and invest in the development of the patented product and method and delay in moving forward with a formal license agreement.

20. On October 22, 2008 Bloomer sent a letter to Univar providing notice of termination of the LOI and demanding that Univar immediately discontinue use of the trademarks, the '330 Patent, and customer information Bloomer had provided to Univar.

21. On October 27, 2008 Bloomer sent a second letter to Univar again demanding discontinuation of the unauthorized use of his intellectual property.

22. Having not received adequate assurances from Univar, on November 19, 2008 Bloomer filed a multi-count patent infringement, trade secret misappropriation, and trademark infringement complaint in the United States District Court for the Eastern District of Kentucky ("Bloomer Patent Litigation"). The Bloomer Patent Litigation was dismissed without prejudice on February 26, 2009 following entry of a standstill agreement between the parties to permit completion of a reexamination of the patent by the PTO.

23. In order to salvage Geomelt's substantial investment in promotion of the patented technology, Geomelt entered into the exclusive licensing agreement with Bloomer referenced in paragraph 14 above.

24. Notwithstanding Bloomer's prior warnings, on November 21, 2008 Univar filed a trademark application with the PTO for a trademark for a de-icing product—ICEBITE®. The

ICEBITE® trademark application referenced a first use of the name and product on November 4, 2008, only a few days following the Bloomer cease and desist letter.

25.     At all relevant times, Univar had, at minimum, constructive notice of Geomelt's ownership and other rights in the GEOMELT® registrations, pursuant to 15 U.S.C. § 1072, as well as actual notice of the Bloomer patent rights.

26.     By virtue of Geomelt's extensive use in interstate commerce and in Iowa of its distinctive GEOMELT® marks to provide its quality goods and services to the road de-icing industry, Geomelt's name and its distinctive GEOMELT® marks have become well known within the road maintenance and engineering community, within the many geographic areas in which Geomelt operates, and with the public in general.  The GEOMELT® trademark is also distinctive as denoting the sole source of the patented technology.

27.     Geomelt has invested and continues to invest substantial amounts of time and money in promoting its products and services offered under the GEOMELT® marks and trade name, and in promotion of the patented technology and methods.  Geomelt has also acquired substantial common law rights on and to the GEOMELT® marks and trade names.

28.     The product Univar sells as ICEBITE® is, according to Univar, physically identical to and a complete copy of the patented formulations and methods over which Geomelt has obtained the exclusive intellectual property rights, including the right to exclude Univar from infringing on the '330 Patent and Geomelt's trademarks.

## UNIVAR'S IMPROPER MARKET CONDUCT

29.     Univar has performed all of the conduct alleged herein with the specific intent to monopolize the market for de-icing products principally made from de-sugared sugar beet

6

molasses, and to engage in acts of unfair competition, trademark infringement, tortious interference with valid business expectancies and contracts, and fraudulent misrepresentations.

30.     Since the introduction of ICEBITE®, Univar has represented that its product meets specifications for GEOMELT® in connection with governmental bid processes in numerous states, claimed ICEBITE® is GEOMELT®, advertised on its website that Univar had purchased or acquired the technology using the "330 Patent, and engaged in other practices likely to cause confusion with Geomelt's trademarks and products.  In addition to being false, these representations and actions have resulted in actual confusion.  Univar has caused such confusion intentionally.

31.     Univar made representations to bid authorities with the intention to mislead purchasers and pass off its product as a Geomelt product.  Univar intentionally confused customers about the true origin of the goods in order to increase its sales and profits and to unfairly compete with Geomelt products without any legal justification.

32.     For example, Geomelt's agent RSI, with Univar's actual or constructive knowledge, represented to one bid authority in 2008 that Univar owned the GEOMELT® trademark and was in the process of changing its name to ICEBITE®.  On another occasion, in May of 2010, Univar represented to a road district engineer that the products were identical to GEOMELT® .

33.     Univar has engaged in unfair competition because it attempts to trade on the goodwill and business reputation of the performance of Geomelt's products and methods for its own advantage.

34.     Further, Univar has falsely represented that ICEBITE® is in compliance with governmental bid specifications when its product is not accepted by specifications or meets the

7

standards and specifications set by bid authorities.   These acts are likely to cause confusion among purchasers, users, and inspectors of products as to whether the material originated from or is sponsored by or approved by Geomelt.   Accordingly, Univar misrepresents the nature, characteristics and qualities of the products marketed and sold by Univar.

## THE NATURE OF THE MARKET AND COMPETITION

35.   The relevant product market for this case is:   "Bio-based de-icing product substantially made of de-sugared sugar beet molasses" (the "Product Market").

36.   The Product Market above is appropriate because there are no reasonably interchangeable substitute products with the performance and environmental characteristics of the patented product referenced herein.   There are no appreciable elasticities of demand and supply between the product and other materials used for eliminating ice and snow.   Purchasers do not regard other bio-based de-icing materials as substitutes for de-sugared beet molasses based de-icing formulations.   Other bio-based de-icing materials are not as effective, create operational problems, and impose higher costs on purchasers.   There is industry recognition of the Product Market as distinct from markets for other de-icing materials, whether bio-based or chemical-based.

37.   The relevant geographic market for this case is the United States and Canada ("Geographic Market").   This is the area of effective competition between Geomelt and Univar. There is no competition between them in any broader geographic area and there are no suppliers of competitive materials from other countries imported into the United States, due to the absence of competitive products that meet specifications and transportation costs.

## UNIVAR'S ANTICOMPETITIVE ACTIONS

38.     Univar has engaged in a series of predatory price and non-price actions specifically designed to harm competition in the relevant market and to gain monopoly power by improper means.

39.     On August 20, 2009 Univar issued a press release announcing it had entered into an exclusive supply agreement with Midwest Agra for rafinates or de-sugared beet molasses for de-icing and freeze-proofing applications in the United States and Canada.

40.     Univar entered into this exclusive dealing arrangement to cut off Geomelt's access to a competitive supply of the raw materials necessary to produce the patented product and compete with Univar's infringing sales.  In doing so, Univar knew that lack of access to the leading economical supplier of the raw materials, and the supplier in closest proximity to Geomelt's plant locations, would impose significantly higher costs, inflict competitive harm on Geomelt, and foreclose competition unreasonably.

41.     In conjunction with its efforts to impose higher costs on its rival, Univar also embarked on a series of predatory pricing tactics, by bidding for state projects in strategic areas below its average variable cost of production and performance of the bid projects.  Prices quoted in the market precipitously dropped from approximately $600 per ton to $125 per ton, thereby reducing net revenue from $300 or more per ton to a loss of up to $50 per ton, in a short period of time.  Prices to customers also fell below prices from the manufacturer to distributors, before price quotation to customers.  Based on Geomelt's industry knowledge, Univar cannot be receiving any positive margins on sales at the prices it is quoting.

42.     This pattern of activity included discriminatory bid situations tactically targeting key opportunities and interfering with free and open competition.  Univar also bid prices that were predatory even if at or above its average variable cost of production.

43.     Univar, given its total size, can endure pricing at or below cost for substantial time periods to attempt to drive Geomelt from the market, knowing that reentry in a timely fashion would not be possible, thus enabling Univar to recoup its losses in the future with supra-competitive, higher prices.

44.     If driven from the market, which is threatened by Univar's conduct, Geomelt could not timely reenter the market due to the cost of reestablishing customer relationships, cost of reestablishing and reconfiguring production facilities and distribution, the loss of competitive raw material supply arrangements at sufficient volume, and the inability to use its first mover advantage in the market and '330 Patent rights.

45.     The anticompetitive acts of Univar also included its  intentional:

   A.  Misrepresentations to bid authorities and customers concerning its ability to furnish products within bid specifications;

   B.  Misrepresentations that ICEBITE® is GEOMELT®, in violation of Geomelt's trademark rights;

   C.  Advertising that it has acquired the technology when it has not;

   D.  Discriminatory bid pricing to target key bid opportunities with below cost or anti-competitively low bid prices to deny and interfere with Geomelt's opportunity to obtain or maintain business; and

   E.  Infringement of the '330 Patent assigned to Geomelt for exclusive use.

.

46.     Univar, knowing Geomelt's limited capital capacity, intended to drive Geomelt out of the market and foreclose its reentry so as to recoup any lost margins incurred during its predatorily low pricing tactics.

47.     If left unchecked, there is a dangerous probability that Univar will succeed in driving Geomelt from the market and unlawfully obtain monopoly power in the Relevant Market.

48.     The allegations and other factual contentions set forth above are likely to have additional evidentiary support after a reasonable opportunity for further investigation or discovery.

## COUNT I
## FALSE ADVERTISING

49.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 48 above.

50.     Univar has made material statements in its advertising which are misleading and likely to deceive or confuse reasonable consumers.  Univar has specifically claimed in its advertising and promotional efforts to customers that ICEBITE® either is or is the same as GEOMELT®.  By claiming that ICEBITE® and GEOMELT® are the same, while failing to disclose it produces ICEBITE® in violation of the '330 Patent, Univar attempts to pass off its products as those of Geomelt and/or misrepresent its own product by virtue of the claimed substantial similarity between the two, leading to confusion on the part of customers and potential customers.

51.     In its website, Univar specifically states that it has acquired the technology of the '330 Patent which statement is expressly false or falsely implies that they have purchased the rights to the '330 Patent or other intellectual property which they do not own.

52.     Univar has also advertised that its product has gone through various tests to meet specifications of customers and bid specifications, when it has not and literally cannot comply with many of such bid specifications.

53.     Univar engages in this advertising and makes these statements with the intent to deceive or confuse reasonable consumers, and with the intent to induce consumers to buy its product.

54.     Univar's false advertising constitutes a violation of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Geomelt has been proximately and consequently damaged by Univar's false advertising.

## COUNT II
## UNFAIR COMPETITION UNDER THE LANHAM ACT

56.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 55 above.

57.     Univar's use in commerce of words and symbols and/or false or misleading descriptions of fact, and violation of the Bloomer patent rights licensed to Geomelt, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship or approval of Univar's products and activities and constitutes a false designation, description or representation in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

58.     Further, Univar's use in commerce of words and symbols and/or false or misleading descriptions of fact that misrepresent the nature, characteristics and qualities of Univar's products constitutes a false designation, description or representation in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

59.     Geomelt has been consequently and proximately damaged by Univar's unfair competitive practices, and has been and will continue to be irreparably harmed and damaged. Geomelt's remedies at law are inadequate to compensate for this harm and damage.

60.     This is an exceptional case, and Geomelt is entitled to an award of attorney fees under 15 U.S.C. § 1117(a).

**COUNT III**
**UNFAIR COMPETITION UNDER IOWA STATE LAW**

61.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 60 above.

62.     Univar's acts complained of herein constitute unfair competition under the common law of Iowa.

63.     Univar's actions create the false impression, and/or are reasonably likely to confuse purchasers, users, and inspectors as to the source and sponsorship of the products. Univar knew, or through reasonable diligence should have known, that its actions were misleading and reasonably likely to deceive customers.

64.     Univar's improper conduct was, and continues to be, willful and malicious and without regard to the damage caused to Geomelt and others, including Bloomer.

65.     Geomelt has been proximately and consequently damaged by Univar's unfair competitive conduct, and will continue to be irreparably harmed and damaged.   Geomelt's remedies at law are inadequate to compensate for this harm and damage.

**COUNT IV**
**ATTEMPT TO MONOPOLIZE-§2 OF THE SHERMAN ACT**

66.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 65 above.

67.     Univar is a large, wholly-owned subsidiary of a Belgian corporation with substantial capital resources and market power in the market for distribution of chemical products.   It has the financial capacity to endure short term losses in order to set prices in particular markets at anti-competitively low prices in order to drive out smaller competitors and create market conditions to deter their reentry.   This is accomplished by strategic price cuts, tying up key suppliers with exclusive supply arrangements for key inputs and raw materials, and leveraging its financial strength.

68.     Having failed to exploit its relationship with Bloomer to market and monetize the value of the '330 Patent and resulting products and methods, Univar embarked on a course of action to intentionally infringe on the '330 Patent, tie up suppliers of key raw materials to deny Geomelt (the successor licensee to the '330 Patent) access to economical supply, misrepresent the nature and qualities of ICEBITE®, falsely claim entitlement to meet bid specifications, engage in false advertising, and perform other acts of unfair competition.

69.     Univar engaged in this conduct with the specific intent to monopolize the relevant market.

70.     The conduct of Univar, if unchecked, will result in Univar obtaining a monopoly in the relevant market and the ability to exercise monopoly power to raise price, exclude and eliminate competitors, and control output in the relevant market.  Accordingly, Univar's conduct violates section 2 of the Sherman Act, 15 U.S.C. §2.

71.     The conduct of Univar injures competition within the meaning of § 4 of the Clayton Act, 15 U.S.C. § 15, by adversely affecting the competitive process in the relevant market as a whole to the detriment of consumers and causing material specific injury and actual damages to Geomelt by artificially increasing its costs, de-valuing its intellectual property rights, and reducing its revenues, profits, and market share.

**COUNT V**
**VIOLATION OF IOWA COMPETITION LAW**

72.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 72 above.

73.     As previously alleged, Univar has the financial capacity to sustain short term losses by selling its products below average variable cost at anti-competitively low prices in the relevant market to drive out smaller competitors and deter their reentry or new entrants.

74.     Univar is engaging in a course of action to intentionally infringe on the '330 Patent, tie up suppliers of key raw materials to deny Geomelt (the successor licensee to the '330 Patent) access to economical supply, misrepresent the nature and qualities of ICEBITE®, falsely claim entitlement to meet bid specifications, engage in false advertising, and perform other acts of unfair competition.

75.     The Iowa Competition Law, Ch. 535 provides, in relevant part:

> A person shall not attempt to establish or establish, maintain, or use a monopoly of trade or commerce in a relevant market

15

> for the purpose of excluding competition or of controlling,
> fixing, or maintaining prices.

Iowa Competition Law, § 535.5.

76.     Univar is attempting to establish a monopoly to exclude competition and to control or maintain prices.  Univar engaged in this conduct with the specific intent to monopolize the relevant market.

77.     The conduct of Univar, if unchecked, will result in Univar obtaining a monopoly in the relevant market and the ability to exercise monopoly power to raise price, exclude and eliminate competitors, and control output in the relevant market.  Accordingly, Univar's conduct violates section 553.5 of the Iowa Competition Law.

78.     The conduct of Univar injures or threatens injury to competition within the meaning of § 553.12 of the Iowa Competition Act, by adversely affecting the competitive process in the relevant market as a whole to the detriment of consumers and causing material specific injury and actual damages to Geomelt by artificially increasing its costs, de-valuing its intellectual property rights, and reducing its revenues, profits, and market share.

79.     The conduct of Univar, as alleged herein, is willful and flagrant and warrants an award of exemplary damages of twice the actual damages to be established at trial, together with attorneys' fees and costs, as provided in § 553.12.3 & .4. of the Iowa Competition Act

**COUNT VI**
**TORTIOUS INTERFERENCE WITH CONTRACT &  BUSINESS EXPECTANCY**

80.     Geomelt realleges and incorporates by reference the allegations in Paragraphs 1 through 79 above.

81.     Geomelt has established relationships with key customers including a number of state departments of transportation, local county government and municipal street divisions, and

private commercial customers built on years of effort in marketing GEOMELT® and the patented technology and methods it involves ("Customers").

82.     Geomelt has secured specifications for products with Customers for its products. Competitors are free to propose alternative specifications for non-infringing products but to Geomelt's knowledge none have done so.

83.     Univar has intentionally interfered with Geomelt's Customers and reasonable business expectancies by engaging in wrongful conduct, including:

  a.  Misrepresenting the nature and quality of its products;

  b.  Misrepresenting that its products meet Customers' specifications;

  c.  Engaging in patent infringement in violation of federal law;

  d.  Engaging in false advertising in violation of federal and state law;

  e.  Engaging in unfair competition in violation of federal and state law; and

  f.  Engaging in an attempt to monopolize in violation of federal and state law.

84.     Univar's actions were performed intentionally and without justification or insufficient justification.

85.     Univar's conduct has proximately caused significant actual damages to Geomelt, including lost profits.

86.     Geomelt has suffered actual damages in excess of $75,000, the precise amount to be proved at trial.

87.     Univar's conduct was performed with legal malice and intentionally, with knowing or reckless disregard for Geomelt's legitimate rights and interests, and an award of punitive damages is warranted to punish Univar and deter similarly situated parties from engaging in the conduct alleged herein.

## **PRAYER**

WHEREFORE, Plaintiff, Geomelt LLC, prays for:

A.     Judgment that Univar has violated section 2 of the Sherman Act, and awarding Geomelt its actual damages, trebled pursuant to 15 U.S.C. §15, and its attorneys' fees and costs.

B.     Judgment that Univar has violated section 553.5 of the Iowa Competition Law Act, and awarding Geomelt its actual damages, doubled pursuant to §53.12, and its attorneys' fees and costs.

C.     A permanent injunction entered against Univar, and its officers, agents, servants, employees, attorneys and all entities and individuals in active concert or participation with them who receive actual notice of such injunction by personal service or otherwise:

        1.     Precluding them and each of them from attempting to monopolize the Relevant Market by engaging in predatory or discriminatory pricing or entering into exclusive supply contracts with suppliers of raw materials necessary to make the products, including ICEBITE®.

D.     Judgment that Univar has engaged in false advertising and unfair competition in violation of the Federal Lanham Act and Iowa law;

E.     A permanent injunction entered against Univar, and its officers, agents, servants, employees, attorneys and all entities and individuals in active concert or participation with them who receive actual notice of such injunction by personal service or otherwise:

        1.     Precluding them and each of them from offering or selling ICEBITE®.

        2.     Precluding them from misrepresenting in connection with any bid specification that ICEBITE® meets the specifications and standards of GEOMELT®.

3.      Precluding them from further acts of unfair competition and false

advertising.

E.      Judgment that Univar has tortiously interfered with Geomelt contracts and

reasonable business expectancies, and an award of actual and punitive damages for tortious

interference;

F.      An award of all statutory and actual damages to which Geomelt is entitled,

including, but not limited to, the profits reaped by Univar through the course of its illegal and

tortious conduct;

G.      A finding that this case is an "exceptional case" within the meaning of 15 U.S.C.

§ 1117(a);

H.      An award of all reasonable attorney fees allowed by statute (including but not

limited to 15 U.S.C. § 15 and 15 U.S.C. § 1117), costs, pre-judgment interest, post-judgment

interest, and enhanced damages as may be just and proper; and

I.      Such other and further relief as the Court may deem proper under the

circumstances.

Dated: October 5, 2010

Respectfully submitted,

*/s/Michael A. Dee*

Michael A. Dee, AT0002043
BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2400
Facsimile:  515-242-2488
E-mail:   dee@brownwinick.com

ATTORNEY FOR PLAINTIFF

19